# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| WILLOW ADAMS, | } |
| | } |
|     Plaintiff, | } |
| | } |
| v. | }    Case No.: 2:14-cv-02295-RDP |
| | } |
| FAIRFIELD SOUTHERN COMPANY, INC., | } |
| | } |
|     Defendant. | } |

## MEMORANDUM OPINION

**I.    Introduction**

This case is before the court on Defendant's Motion for Summary Judgement (Doc. # 21), filed October 26, 2015. The Motion is fully briefed and supported by the parties' evidentiary submissions. (Docs. # 22, 23, 24, 25, 26). In this case, Plaintiff alleges violations of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"). Defendant contends Plaintiff's claim fails because he has failed to establish a *prima facie* case, cannot establish pretext, and has failed to mitigate his damages. (Doc. # 22 at pp. 13-24). After careful review, the court agrees and concludes that Defendant's Motion is due to be granted.

**II.    Relevant Undisputed Facts[1]**

Plaintiff was born on June 12, 1926, and began working for Fairfield Southern ("FS" or "Defendant") on September 6, 1951.[2] (Doc. # 23-1 at pp. 7, 16; Doc. # 25-2 at FS000001). FS

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Admr. U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

operates a rail line within United States Steel Corporation ("U.S. Steel")'s Fairfield Works in Alabama, as well as other rail lines at other U.S. Steel facilities. (Doc. # 23-3 at p. 1). Plaintiff started his career as a switchman before eventually becoming a conductor, and ultimately a train operator in 1973. (Doc. # 23-1 at pp. 18-20). Plaintiff remained a train operator until he was terminated on September 11, 2013. (Doc. # 23-2 at FS000109). As a train operator at FS, Plaintiff's job included operating trains by remote control in and around U.S. Steel's Fairfield Works. (Doc. # 23-1 at pp. 19, 37-38).

Plaintiff was a member of the United Steelworkers of America Union ("USWA"), which represents the bargaining unit employees in the formation of collective bargaining agreements governing the terms and conditions of their employment. (Doc. # 23-3 at p. 2). The union agreement with Defendant contains a non-discrimination clause, grievance procedure, and provides for a final and binding arbitration of grievances by the Board of Arbitration, while also establishing a Joint Committee on civil rights for discrimination complaints. (*Id*.). FS also has an equal employment opportunity ("EEO") policy, discriminatory harassment policy, code of ethical business conduct policy, and an anonymous hot line for workers to report complaints. (*Id*.). Although Plaintiff got along with him, about two or three months before his discharge, one of FS's Transportation Superintendents, Tommy Hosmer, "cracked and said" Plaintiff was "the oldest man in the company," and Plaintiff said "I get treated worse than any man here." (Doc. # 23-1 at pp. 47-48, 50-51, 127-28). (Plaintiff "guess[es]" that he means "joking" when he says "cracking." (*Id.* at p. 51)). Some of Plaintiff's fellow union workers also asked him when he was going to retire. (*Id.* at pp. 48-49). Plaintiff testified that he did not use (and there is no record of

---

[2] Plaintiff worked for predecessor companies United States Steel Corporation and TCI. (Doc. # 23-1 at pp. 15-17).

him utilizing) any of the above-mentioned reporting mechanisms to file a grievance complaining of age discrimination. (*Id.* at pp. 136, 147; Doc. # 23-3 at p. 2).

A train operator's performance is governed by "Cardinal Rules," general operating rules, special rules, and safe job procedure. (Doc. # 23-1 at pp. 136-40; Doc. # 23-2 at FS000472; Doc. # 23-4 at pp. 33-37). These rules and procedures exist because safety is extremely important when working around trains due to the potential danger to persons or property, including death. (*Id.*). Cardinal Rules are applied throughout all of Transtar's railroad properties. (*Id.*). They are directed at safety matters and intended to cover potential threatening situations to both people and property. (*Id.*). Additionally, general operating rules are in place to protect against property damages and describe how to perform daily tasks. (Doc. # 23-4 at pp. 10-14). Special rules apply at specific facilities and are a combination of safety and operating rules. (*Id.*). Finally, safe job procedures are simply step by step instructions on how to perform specific tasks. (*Id.*). Plaintiff acknowledges that he is supposed to follow all of these rules. (Doc. # 23-1 at p. 44).

In the three-year timeframe prior to his termination, Plaintiff had a number of incidents for which he received discipline. Plaintiff received a three-day suspension on September 6, 2011, because a train he was operating hit a gate at #9 Pipe Mill at USS. (Doc. # 23-2 at FS000120). This was followed by another suspension of fifteen days on February 29, 2012, which involved a derailment, violation of special instruction PM-3 1-c, and a violation of Cardinal Rule #14.[3] (*Id.* at FS000119). On March 9, 2012, a manager from FS conducted an intervention with Plaintiff regarding the Cardinal Rule #14 violation. (*Id.* at FS000117). The manager's comments on that

---

[3] Special Instruction PM-3 1-c provides, "The Forman or shipper will unlock derails and activate green light after making certain area is clear." Cardinal Rule #14 states "Continuous visual monitoring in the direction of travel (head end protection) must be performed prior o and during movement of rail equipment to ensure the path of travel is clear. Engineers/Operators/Train Service personnel must be able to see both sides of a designated railroad crossing. An audible warning must be made prior to and through the crossing when the locomotive is on leading end of movement." (Doc. # 23-5 at FS000119).

interview were complimentary, indicating that Plaintiff "has had a remarkable career with Fairfield Southern" and "is a very safe and reliable employee." (*Id*.). The manager's report also acknowledged that Plaintiff attributed the incident to the helper working with him when the incident happened, and made a commitment to discuss safety with other employees. (*Id*.). Next, on December 10, 2012, Plaintiff received a thirty-day suspension for again violating CR #14 and Special Rule 813.2, when a rail car was driven over a bumper block and was suspended in mid-air.[4] (Doc. # 23-1 at pp. 119-20; Doc. # 23-2 at FS000115-16, FS000112-13; Doc. # 23-4 at pp. 60, 88-92).  After he returned to work following his thirty-day suspension, Plaintiff's final incident occurred on August 31, 2013. (Doc. # 23-1 at p. 67). The manager who observed this incident specifically noticed Plaintiff leaving four rail cars in foul[5] of an adjacent rail spur, and crossing between railroad equipment without the minimum fifty feet of separation. (Doc. # 23-4 at pp. 62, 71-72, 104-05, 107-08; Doc. # 23-5 at FS000110-11, ADAMS Docs 56).   These actions violated Cardinal Rules #4 and 5.[6] (Doc. # 23-5 at FS000110-11, ADAMS Docs 56).

Defendant's methodology for dealing with disciplinary actions after an incident occurs requires the train operator involved to be immediately removed from service, and it typically

---

[4] The description for Notice FS-29/Special Rule 813.2 states: "The remote control operator must visually determine the direction of the equipment begins to move to ensure direction of movement as intended, or a member of the crew must visually determine the direction the equipment moves and confirm the direction with the remote control operator. If no confirmation is received, the movement must be immediately stopped." (Doc. # 23-2 at FS000115-FS000116, FS000112-FS000113).

[5] "Fouling a track means the placement of an individual in such proximity to a track that the individual could be struck by a moving train or other on-track equipment, or in any case is within four feet of the nearest rail." 49 C.F.R. § 220.5.

[6] The language of Cardinal Rule #4 is as follows:

Never go between equipment attached to a locomotive or foul a track until the movement comes to a complete stop, slack adjusts and Red Zone Protection is requested and granted. A minimum separation distance of fifty (50) feet between equipment must be achieved before going in between equipment. Do not cross or foul tracks within twenty (20) feet of equipment.

Doc # 23-5 at ADAMS Docs 56). Cardinal Rule #5 reads: "Never leave rail equipment fouling a switch or another track.  (*Id.*).

calls for a review of the video from the camera on the train engine at issue. (Doc. # 23-4 at pp. 19, 55-56, 181-82). Here however, although FS reviewed the video of Plaintiff's final incident, FS did not retain copies of it (*id.* at pp. 56, 58-59, 62, 71-72, 112, 114-18, 124), and claims the videotapes were recirculated and recorded over. (*Id.* at pp. 58-59).

After the August 31, 2013 incident, consistent with the protocol that applies when a train operator is thought to have violated a Cardinal Rule, Plaintiff was removed from service. (Doc. # 23-1 at pp. 65-71). This occurred via a telephone call from Hosmer. (*Id.* at pp. 67-68, 70-71; *see also* Doc. # 23-4 at pp. 60-61 (Defendant typically notifies employees of a suspension "either at the time or via telephone")). FS General Superintendent Daniel Webb reviewed Plaintiff's violations. (Doc. # 23-4 at pp. 60-61; *see also* Doc. # 23-2 at FS000110). Consistent with Defendant's methodology, Plaintiff received from Hosmer (who reported to Webb) a letter dated September 3, 2013, suspending him for five days. (Doc. # 23-1 at p. 70; Doc. # 23-2 at FS000110; Doc. # 23-4 at pp. 54, 60-61).

The company and the union, pursuant to the collective bargaining agreement, then held a meeting (a "9b hearing") to discuss Plaintiff's punishment. (Doc. # 23-4 at pp. 13-15, 26; Doc. # 23-2 at FS000109). The union was presented with the videotape and photographs of the Plaintiff's Cardinal Rule violation. (Doc. # 23-4 at pp. 58-59, 114). Plaintiff was not present at the 9b hearing. (Doc. # 23-1 at p. 82; Doc. # 23-4 at pp. 26-27).

After the 9b hearing, Webb notified Plaintiff by letter dated September 11, 2013, that as a result of his "disciplinary history and the severity of the offense" his discipline was amended to a discharge. (Doc. # 23-1 at pp. 61, 81; Doc. # 23-2 at FS000109; Doc. # 23-5 ADAMS Docs 32; *see also* Doc. # 23-4 at pp. 25, 39). Webb has held the position of General Superintendent at FS since August 14, 2012, and is in charge of making employment decisions. (Doc. # 23-4 at pp. 9-

11). However, his decisions can be overturned or modified if a grievance is filed (depending upon the outcome of the grievance as it progresses through the grievance and union arbitration process). (*Id*. at pp. 9-11, 14-17, 126-27). FS states it follows a progressive disciplinary policy. (*Id.* at pp. 12-14).

In making a discipline decision, Webb considers all the circumstances--including the employee's discipline history for the preceding three-years and the severity of an offense--and works with the FS labor relations department and, in determining disciplinary action for an offense, compares the situation to similar cases for consistency. (Doc. # 23-4 at pp. 20-22, 132-136). However, Webb does not take into account years of service, discipline regarding attendance and tardiness, or the number of individual violations alone in making his decision. (*Id*. at pp. 133-136). Upon weighing all these factors, Webb makes a determination whether termination is justified. (*Id*.).

Plaintiff filed a grievance on August 31, 2013, claiming he had been unjustly disciplined and requested to "be made whole for any and all monies and benefits lost." (Doc. # 23-1 at pp. 73-75; Doc. # 23-2 at ADAMS Docs 34; Doc. # 23-4 at pp. 130-32). Pursuant to the collective bargaining agreement, a second step meeting occurred. (Doc. # 23-4 at pp. 32-33). FS affirmed Plaintiff's discharge. (*Id*.). Thereafter, FS and the USWA held a third step meeting. (Doc. # 23-3 at pp. 3-4; Doc. # 23-5 at FS000103). FS rejected Plaintiff's grievance and affirmed its decision to terminate Plaintiff's employment. (*Id*.). Defendant notified the USWA of that decision on February 26, 2014, and invoked a provision of the collective bargaining agreement that put the union "on the clock" to decide whether it would pursue the matter in arbitration. (Doc. # 23-5 at FS000103). The union ultimately decided not to take Plaintiff's grievance to arbitration. (Doc. # 23-1 at pp. 55-56, 63, 80; Doc. # 23-3 at p. 4; Doc. # 23-4 at pp. 29-30).

Plaintiff subsequently filed his EEOC charge on December 2, 2013. (Doc. # 1-1; Doc. # 23-5 at ADAMS Docs 30). In it, he claimed he was discharged because of his age and race. (*Id*.).

Thirty-five FS employees, including Plaintiff, committed Cardinal Rule and safety-rule violations between January 1, 2012 and March 2015. (Doc. # 23-3 at p. 4-7). Of those thirty-five employees, twenty-one (60%) were over the age of forty, and fourteen (40%) were under the age of forty. (*Id*. at p. 4). Of the twenty-one employees older than forty years, five (23.8%) were discharged. (*Id*. at p. 5). Of the fourteen employees under forty years, five (35.7%) were discharged. (*Id*.). Since September 2013, FS has hired new employees who are "substantially younger" than Plaintiff. (Doc. # 23-4 at 139:6-139:13).

### III.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts

about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson v. Liberty Lobby, Inc.*, teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

**IV.    Analysis**

Defendant advances three arguments in support of its summary judgment motion. First, it contends that Plaintiff cannot establish a *prima facie* case. In support of that argument Defendant asserts that no similarly situated employees outside of Plaintiff's protected class were treated more favorably than him. As part of this first argument, Defendant also contends that Plaintiff is not similarly situated to individuals who had their grievances processed by USWA to the third and final stage of arbitration, as allowed by the collective bargaining agreement. Second, Defendant contends that even if Plaintiff has established a *prima facie* case, he cannot show that its reason for terminating him was a pretext for impermissible discrimination. That is, Defendant argues that it has presented legitimate, nondiscriminatory reasons for its decision to terminate Plaintiff, and there is no evidence its reasons are pretextual. Finally, Defendant asserts that Plaintiff is barred from recovery of back pay or front pay on his claim, because he has failed to mitigate his damages by conducting a reasonable search for substantially equivalent employment. The court finds it unnecessary to address Defendant's third argument regarding mitigation of damages, because it agrees concerning the first two contentions. It addresses each argument, and Plaintiff's counter-arguments, in turn, below.

### A.     Plaintiff Has Failed to Establish Genuine Dispute of Material Fact with Respect to his Discrimination Claim.

Plaintiff claims he was terminated because of his age. His age claim is governed by the ADEA. The ADEA makes it "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age." 29 U.S.C.S. § 623 (emphasis added). The phrase "because of" has been interpreted to mean that age must be the "but for" reason the employer decided to act. *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176 (2009). "To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Id*. The Supreme Court further held that, nothing in the statute's text indicates that Congress has carved out an exception to that rule for a subset of ADEA cases. *Id.* at 177. Where the statutory text is "silent on the allocation of the burden of persuasion," we "begin with the ordinary default rule that plaintiffs bear the risk of failing to prove their claims." *Id.* (quoting *Schaffer v. Weast*, 546 U.S. 49, 56 (2005)).

To prevail on his disparate-treatment claim in violation of the ADEA, Plaintiff must establish that age was the "but-for" cause of his employer's adverse decision. *Gross*, 557 U.S. at 176. Defendant argues that there is "no direct evidence of age discrimination" and the court agrees.[7] (Doc. # 22 at p.13). Because no direct evidence of discrimination exists here, Plaintiff must either satisfy the circumstantial evidence framework provided in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), *see Thomas v. Humana Health Plan, Inc.*, 457 F. App'x 819, 821

---

[7] Defendant's brief acknowledges Plaintiff's claims regarding co-workers making jokes about his age. However, as Defendant correctly notes, the alleged jokes are not evidence of age discrimination, because they were made by non-decision making parties, and are thus irrelevant. *Washington v. United Parcel Serv., Inc.*, 567 F. App'x 749, 751 (11th Cir. 2014) (*per curiam*) (citing *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th Cir. 1998)). That is, Hosmer (who reported to Webb) made a joke, but he did not make the employment decisions at issue here.

(11th Cir. 2012) (*per curiam*) (citations omitted); *see also Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1268 n. 6 (11th Cir. 2001) ("Although the *McDonnell Douglas* framework originally applied to Title VII cases, it is now widely accepted that the framework applies to claims of discrimination under the ADEA as well."), or otherwise raise some inference of age discrimination. The *McDonnell Douglas* framework requires a plaintiff to present a *prima facie* case of discrimination. *Thomas*, 457 F. App'x at 821 (citation omitted). If Plaintiff is able to establish a *prima facie* case then the burden shifts to the employer (FS) to demonstrate that the employment decision was made for legitimate, nondiscriminatory reason. *Id*. (citation omitted). Then, should Defendant articulate a reason that is legitimate and nondiscriminatory, any presumption of discrimination "drops from the case." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 & n. 10 (1981)) (internal quotations omitted).

To establish a *prima facie* case of an ADEA violation, Plaintiff must prove (1) he is a member of a protected class; (2) he was subjected to an adverse employment action, (3) FS treated similarly situated employees outside the class more favorably, or he was replaced by a younger individual; and (4) he was qualified to do the job. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *Washington v. United Parcel Serv.*, 567 F. App'x 749, 751 (11th Cir. 2014) (*per curiam*); *Brooks v. CSX Transp., Inc.*, 555 F. App'x 878, 883 (11th Cir. 2014) (*per curiam*); *Thomas*, 457 F. App'x at 821. Plaintiff has established he is a member of a protected class because he is over the age of forty, and the court infers he was qualified inasmuch as he held his position for a significant period of time. (Doc. # 23-1 at pp. 7, 16-17). *See Crapp v. City of Miami*, 242 F.3d 1017, 1020 (11th Cir. 2001) (noting that "where a plaintiff has held a position for a significant period of time, qualification for that position sufficient to satisfy the test

of a *prima facie* case can be inferred"). Plaintiff clearly suffered an adverse employment action, as he was terminated from his job. (Doc. # 23-2 at FS000109).  Thus, the only *prima facie* case issue here is whether Plaintiff has satisfied the third prong.

Plaintiff contends that the only question here is whether FS replaced him with a younger individual, and that he has adequately shown this to be true.  (*See* Doc. # 24 at pp. 13-14) (quoting *King v. Adtran*, 626 F. App'x 789, 791 (11th Cir. 2015) (*per curiam*) (citing in turn *Chapman v. Al Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*))). Of course, the *prima facie* case elements are flexible and there are alternatives to this "required" showing. The "similarly situated" standard is such an alternative to the "younger individual" test and these represent different means of making a *prima facie* case of age discrimination. *See, e.g.*, *Washington*, 567 F. App'x at 751 ("In order to make out a *prima facie* case for an ADEA violation, the plaintiff must show that she . . . (4) was replaced by a younger individual, *or* that her employer treated employees who were not members of her protected class more favorably under similar circumstances." (citations omitted)). The "younger individual" standard is inapplicable here because there is insufficient evidence to show who replaced Plaintiff.  But even if that were not so, Plaintiff has not, at this stage, made "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. In other words, Plaintiff has not presented "specific factual evidence, . . . more than mere allegations" that he was terminated so that a younger individual could assume his position. *Gargiulo*, 131 F.3d at 999. He only points the court to (and the court's review of the record reveals) a very brief portion of Defendant's Rule 30(b)(6) deposition: "Have there been any new hires at [FS] since September of 2013? A. I believe there has, yes. Q. And would it be a fair statement all would be substantially younger

than Willow Adams? A. That's fair." (Doc. # 23-4 at 139:6-139:13). A statement that the company as a whole hired new individuals substantially younger than Plaintiff is in no way indicative of Plaintiff being *replaced* in his particular position by a younger individual (nonetheless, an individual younger than the age of the protected class, *i.e.* forty). *See, e.g.*, *Gortemoller v. Int'l Furniture Mktg., Inc.*, 434 F. App'x 861, 863 (11th Cir. 2011) (*per curiam*) (to determine whether a younger individual replaced a plaintiff in the protected class a court considers, "among other things, the plaintiff's position and responsibilities). To be sure, Plaintiff's facts may be enough to survive a motion to dismiss the pleadings, but there is not enough factual evidence to allow the case to proceed to a jury.

Similarly, Plaintiff has failed to identify similarly situated comparators younger than him who were treated more favorably. In order to make a valid comparison, Plaintiff must show that he and his comparators are similarly situated in *all* relevant respects. *Washington*, 567 F. App'x at 751 (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). To establish a disciplinary comparator, a plaintiff must establish that the comparator's misconduct is "nearly identical" to Plaintiff's misconduct in "quantity and quality."[8] *Id.* at 751-52 (citing *Maniccia*, 171 F.3d at 1368-69).

Plaintiff identifies J. Casey Brown ("Brown") and J. Nelson ("Nelson") as comparators in his summary judgment opposition. The court addresses the Rule 56 facts about Brown and Nelson, in turn.

Brown was hired by FS on June 23, 2010 and was approximately twenty-five years old when he was terminated on September 10, 2014. (Doc. # 25-2 at FS000001). He was first hired

---

[8] Of course, alternatively, a plaintiff may withstand summary judgment in the absence of an adequate comparator if he presents "a convincing mosaic of circumstantial evidence" that would allow a reasonable jury "to infer intentional discrimination by the decisionmaker." *Washington*, 567 F. App'x at 752 (quoting *Smith v. Lockheed-Martin*, 644 F.3d 1321, 1328 (11th Cir. 2011)). Plaintiff has not made this alternative showing here.

as a helper (a different job than the one held by Plaintiff), and performed different duties than Plaintiff. (Doc. # 23-4 at pp. 164-64; Doc. # 25-2 at FS000001). Also, Brown was not hired to replace Plaintiff. In fact, he was hired three years prior to Plaintiff's termination date and before the date of Plaintiff's first violation (September 6, 2011) during the three-year time period leading up to his discharge. (*Compare* Doc. # 23-2 at FS000120 *and* Doc. # 25-2 at FS000001). Brown was later promoted to the position of train operator at an unspecified date. However, at the time Brown was hired, he was placed in a different job with different responsibilities and duties. Thus, Brown and Plaintiff are not similarly situated. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1326 n.17 (11th Cir. 2011).

Nelson was hired by FS on August 15, 2011, also originally as a helper, and was approximately forty-two when he was terminated on July 28, 2014. (Doc. # 23-5 at FS000846; Doc. # 25-2 at FS000003). Again, like Brown, Nelson was hired before Plaintiff was discharged and was hired to fill a different role than the one Plaintiff occupied.

In the Complaint, Plaintiff also alleged that "Defendant treated Plaintiff worse than the following individuals who committed the same rule violations as Plaintiff: William Sellers (33), (FNU) Roman (30s), Ben Davis (40s), (FNU) Davis (40s), Patrick Herrion (40), and (FNU) Buckelow (40)." (Doc. # 1 at ¶ 15). According to Plaintiff's evidentiary submission, Sellers and Roman (1) were Transportation Supervisors (Plaintiff was listed as an Assistant Superintendent), and (2) had their suspensions amended to full discharge (although, to be sure, they were reinstated). (Doc. # 25-2 at FS000001, FS000003). Moreover, the circumstances here (Plaintiff had multiple incidents in the three-year period before his discharge) were not present in the cases of these other employees. Plaintiff has not pointed to any comparator who had four separate severe incidents within three years, committed nearly identical safety violations including

crashing a rail car into a gate, driving a rail car over a bumper block, fouling track and also fouling equipment by leaning over a knuckle without fifty feet of separation between equipment, committed Cardinal Rules #4 and 5 violations on the same shift, and who had previously been suspended three times (for periods of three, fifteen, and thirty days). (Plt. Dep., pp. 145-46). *See Horn v. United Parcel Servs. Inc.*, 433 F. App'x 788, 794-95 (11th Cir. 2011) (finding that plaintiff failed to identify proper comparators where "the other six center managers … were not accused of 'nearly identical' misconduct" because four managers had only one "integrity violation" while plaintiff had three and, although one manager had committed a similar number of violations, the nature of the violations were materially different from those committed by plaintiff); *Greer v. Birmingham Beverage Co.*, 291 F. App'x 943, 946 (11th Cir. 2008) (holding plaintiff failed to identify a similarly situated comparator where plaintiff's excessive phone use was greater than that of the alleged comparators stating "[t]he quantity and quality of the comparator's misconduct must be nearly identical to prevent courts from second-guessing employers' reasonable decisions"). Plaintiff has noted that other employees have committed safety violations, but has utterly failed to explain how those alleged comparators engaged in the same "quantity" and "quality" of violations he did. *Maniccia*, 171 F.3d at 1368. This does not suffice to meet his burden. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (finding it necessary that a comparator be "nearly identical to prevent courts from second-guessing a reasonable decision by the employer").

Indeed, a substantial argument is that it is Plaintiff (not others) who was treated more favorably. *Davis v. Dunn Constr. Co.*, 872 F. Supp. 2d 1291, 1331 (N.D. Ala. 2012) (no *prima facie* case where plaintiff "selectively choos[es] a single comparator who was allegedly treated more favorably, while ignoring a significant group of comparators who were treated equally to

15

her" (quoting *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 642 (3d Cir. 1998)). Indeed, FS employees who were under the age of forty and committed Cardinal Rule and safety rule violations were discharged at a substantially greater rate (35.7%) than were those over the age of forty (23.8%). Webb discharged four employees under the age of forty on the first occasion they committed Cardinal Rule violations (Simmons – 29, McGhee – 32, Sellers – 33, and Roman – 35). Hood (38) was discharged on the second occasion when he violated Cardinal Rules. There is no employee under the age of forty who within the previous three years had a three-day, fifteen-day, and thirty-day suspension and violated a Cardinal Rule but who was not discharged by Webb. Similarly, there is no employee that committed Cardinal Rules #4 and 5 violations on the same shift and was not discharged by Webb. No other employee ever drove a rail car over a bumper block. (Doc. # 23-3 at ¶¶ 19-37).

  Even if both Brown, Nelson, or another employee could be deemed similarly situated to Plaintiff (and, to be sure, they cannot) and even if they engaged in the same misconduct (and, to be clear, Plaintiff has also failed to make this showing), Plaintiff has still failed to demonstrate that those outside the protected group were treated more favorably than him.

  Finally, Plaintiff argues that some of the other employees who were discharged received "last chance agreements" as a result of the third stage of the grievance process (*i.e.*, arbitration). But, the USWA decided not to pursue arbitration in Plaintiff's case; therefore, Plaintiff is not similarly situated to those employees that the union arbitrated for after they grieved their discipline. Therefore, the Rule 56 record does not support Plaintiff's assertion that he is similarly situated to Brown or Nelson. Plaintiff has not established a *prima facie* violation of the ADEA.

### B. Plaintiff Has Failed to Establish Pretext.

Even if Plaintiff had established a *prima facie* ADEA violation (and to be clear, he has not), he has not shown that the legitimate reasons Defendant offered for his termination were merely pretext. *See Combs*, 106 F.3d at 1528. "To survive summary judgment, Plaintiff must come forward with evidence that Defendant's articulated legitimate, nondiscriminatory reason is merely a pretext for unlawful discrimination." *Nowlin v. Jones Intercable, Inc.*, 102 F. Supp. 2d 1364, 1371 (S.D. Ga. 2000) (citing *Burdine*, 450 U.S. at 256). Defendant has articulated legitimate, nondiscriminatory reasons (safety) for discharging Plaintiff. Plaintiff cannot rely on conclusory allegations and assertions as the only source of support for his claim that the legitimate, nondiscriminatory reasons Defendant put forth are false, and that age was the "but for" reason for Plaintiff's discharge. *See Gargiulo*, 131 F.3d at 999. Plaintiff is instead required to present "concrete evidence in the form of specific facts." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

> The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such circumstances, there can be "no genuine issue of material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Earley*, 907 F.2d at 1080 (quoting *Celotex Corp.*, 477 U.S. at 322-23). Here, Defendant "is 'entitled to a judgment as a matter of law' because [Plaintiff] has failed to make a sufficient showing on an essential element of h[is] case with respect to which []he has the burden of proof." *Id.*

Plaintiff had multiple Cardinal Rule infractions within the three-year scope of review undertaken by FS. Again, as already noted, Cardinal Rules are meant to protect against loss of life and property. Plaintiff does not dispute that he, in fact, committed these violations. There is

17

no evidence of age animus by Webb in making his decision to discharge Plaintiff.[9] The evidence offered by Defendant regarding its disciplinary actions demonstrates that, statistically, age has not been a factor in discharge decisions. Indeed, Plaintiff's protected class was actually discharged at a lower rate than those not in the protected class. (*See* Doc # 23-3 at pp. 4-7). Nor is there any basis for saying the Rule 56 record permits an inference of pretext or a finding of age discrimination. After viewing the summary judgment evidence in the light most favorable to the nonmoving party, the court concludes that no reasonable jury could find that age played any role in Plaintiff's discharge. Therefore, Defendant is entitled to summary judgment on Plaintiff's discrimination claim.

## V.     Conclusion

For all of these reasons, the court determines that no question of material fact exists regarding Plaintiff's claim of age discrimination. Plaintiff has failed to bear the burden of presenting a *prima facie* case. He has also failed to show that Defendant's reasoning for discharging plaintiff was merely a pretext for unlawful discrimination. Therefore, Defendant's Motion for Summary Judgment (Doc. # 22) is due to be granted. A separate order will be entered.

**DONE** and **ORDERED** this July 13, 2016.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE

---

[9] It is not lost on the court that one of Plaintiff's violations resulted in a train car suspended in mid-air. (Doc. # 23-1 at pp. 119-20; Doc. # 23-2 at FS000115-16, FS000112-13; Doc. # 23-4 at pp. 60, 88-92; *see also* Doc. # 3-3 at p. 10 ("I know of no other FS employee who has ever driven a rail car on top of a bumper block.")). And, although FS cited Plaintiff with violations of CR #14 and Special Rule 813.2, it only suspended him for five days. (Doc. # 23-2 at FS000115-16). FS did not terminate Plaintiff until a later incident, which violated CRs # 4 and 5. (*See* Doc. # 23-2 at FS000109; Doc. # 23-5 at FS000110-11, ADAMS Docs 56). And, the USWA—the union that represents Plaintiff—would not go to bat for him in arbitration. (Doc. # 23-1 at pp. 55-56, 63, 80; Doc. # 23-3 at p. 4; Doc. # 23-4 at pp. 29-30; *see also* Doc. # 23-4 at pp. 58-59, 114). On this record of undisputed facts, the court may reasonably infer that even the union determined Plaintiff's termination to be for entirely legitimate reasons.